SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
---------------------------------------------------------------X

THIRD STREET EQUITY, LLC and DEVELOPING NY STATE, LLC,

        Plaintiffs,

-against-

ACCREDITED SURETY AND CASUALTY COMPANY, INC.,

        Defendant.

---------------------------------------------------------------X

Index No.

**SUMMONS**

Basis of Venue:
CPLR §503(a)
Plaintiff's residence

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** and required to serve upon the plaintiffs' attorneys, an answer to the annexed complaint, which is herewith served upon you with all relevant pleadings in the action, within twenty (20) days after the service thereof, exclusive of the day of service, or within thirty (30) days after service is complete if service is made by any method other than personal delivery to you within the State of New York.

In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, NY
      February 21, 2024

FLEISCHNER POTASH LLP

By: _____
    Jennifer F. Mindlin, Esq.
*Attorneys for Plaintiffs,*
*Third Street Equity, LLC and*
*Developing NY State, LLC*
45 Broadway, 23rd Floor
New York, NY 10006
T: (646) 520-4200
Email: JMindlin@fp.law
File No.: 706-24182

TO:    Accredited Surety and Casualty Company, Inc.
        Via NY Dept. of Financial Services
        One Commerce Plaza
        Albany, NY 12257

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
---------------------------------------------------------------X
THIRD STREET EQUITY, LLC and DEVELOPING
NY STATE, LLC,

    Index No.

               Plaintiffs,

    -against-

**COMPLAINT FOR
DECLARATORY JUDGMENT**

ACCREDITED SURETY AND CASUALTY
COMPANY, INC.,

               Defendant.
---------------------------------------------------------------X

Plaintiffs, THIRD STREET EQUITY, LLC ("Third Street Equity") and DEVELOPING NY STATE, LLC ("Developing NY"), (collectively, "Plaintiffs"), by way of Complaint for Declaratory Judgment and for Damages against Defendant, ACCREDITED SURETY AND CASUALTY COMPANY, INC. ("Accredited" or "Defendant"), alleges as follows:

1. Plaintiffs bring this action seeking a declaratory judgment that Defendant is obligated to provide defense and indemnity coverage on a primary basis to Plaintiffs as additional insureds for the consolidated lawsuit entitled *Tunin Moises Ordonez Romero v. Third Street Equity, LLC, Developing NY State, LLC and Yatziv Corp.*, Index No. 722904/2021, pending in the Supreme Court, Queens County (the "Underlying Romero Lawsuit"), and that Defendant must reimburse Plaintiffs for the fees and costs incurred for their defense in the Underlying Romero Lawsuit.

**THE PARTIES**

2. Plaintiff Third Street Equity is a New York Limited Liability Company with its principal place of business located in New York.

1

3. Plaintiff Developing NY is a New York Limited Liability Company with its principal place of business located in New York.

4. Based on information and belief, Accredited is an insurance company incorporated in the State of Florida, with its principal place of business located in Florida. Accredited is authorized to, and does transact, the business of insurance in the State of New York.

### UNDERLYING ROMERO LAWSUIT

5. On or about October 12, 2021, Plaintiff Tunin Moises Ordonez Romero commenced an action in the Supreme Court, Queens County against Third Street Equity and NY Enterprise Realty Corporation seeking recovery for personal injuries allegedly sustained on June 22, 2021 when he was caused to trip and fall while working at the premises located at 26-35 3rd Street, Queens, NY. A true and accurate copy of the Complaint is annexed hereto **Exhibit A**.

6. On or about December 24, 2021, Plaintiff Tunin Moises Ordonez Romero filed an Amended Complaint in the Supreme Court, Queens County against Developing NY and Yatziv Corp. seeking recovery for personal injuries allegedly sustained on June 22, 2021 when he was caused to trip and fall while working at the premises located at 26-35 3rd Street, Queens, NY. A true and accurate copy of the Amended Complaint is annexed hereto **Exhibit B**.

7. In the Underlying Romero Lawsuit, Mr. Romero alleges that Defendants owned, operated, maintained, managed, controlled and supervised the subject property. *See* Exs. A and B. Mr. Romero further alleges that Defendants hired various entities to provide and perform certain work, labor and/or services. *Id.*

8. According to Mr. Romero, on June 22, 2021, he was working at the subject premises when he was caused to trip and fall as a result of the Defendants' failure to keep the subject worksite clear from scattered tools, materials and debris. *See* Ex. A ¶ 51 and Ex. B ¶ 51.

9. Mr. Romero asserts claims against all Underlying Defendants for Negligence and Violations of Labor Law Sections §§ 200, 240 and 241(6). *See id.*

10. In his Verified Bill of Particulars, dated April 1, 2022, Plaintiff alleges that he was a laborer employed by Capital Concrete at the time of the alleged accident.

11. The two Underlying Romero Lawsuits were consolidated pursuant to a So Ordered Stipulation, dated April 5, 2023.

12. On or about February 9, 2023, Third Street Equity and Developing NY filed a Third-Party Complaint against Capital Concrete NY LLC ("Capital Concrete") seeking common law and contractual indemnification and contribution and damages for breach of contract to procure insurance. A true and accurate copy of the Third-Party Complaint is annexed hereto **Exhibit C**.

13. Third-Party Plaintiffs allege that, on or before July 27, 2020, Developing NY entered into a Subcontract Agreement for work at the subject premises. *Id.* ¶ 5. Third-Party Plaintiffs further allege that, at the time and place referred to in Plaintiff's pleadings, Capital Concrete was performing work and services at and exercised control over the place of the occurrence referred to in Plaintiff's pleadings. *Id.* ¶¶ 15-16.

## CONTRACT

14. Prior to the subject accident, Developing NY retained Capital Concrete to perform certain work, labor, and services at the subject premises pursuant to written contract.

15. The Agreement Between Contractor and Subcontractor, between Developing NY and Capital Concrete (the "Agreement") calls for Capital Concrete to perform certain concrete work in accordance with Rider A. Rider A incorporates Capital Concrete's Proposal #737-3 to Developing NY.

3

16. The Agreement contains the following provisions regarding Safety Precautions and Clean Workplace:

<u>Safety Precautions; Injuries; Clean Workplace Continuation:</u>

\*\*\*

**b.** Subcontractor shall always keep the construction site free from accumulation of debris, waste material or rubbish. Subcontractor will leave his workplace " clean" immediately after completing each phase. In the event of a dispute between Subcontractor, Contractor and/or any other subcontractor as to the responsibility for removal of rubbish, surplus material, tools, scaffolding or equipment from the construction site, Contractor may remove any such disputed item and allocate the cost of such removal to each subcontractor responsible therefore, such allocation to be binding upon Subcontractor. Any default by Subcontractor pursuant to this paragraph may be remedied by Contractor and the cost thereof, shall be immediately due and payable by Subcontractor to Contractor.

\*\*\*

**Safety Precautions; Injuries; Clean Workplace:**
**9. a.** Subcontractor is legally responsible for compliance with N.Y.C. OSHA Safety Regulations and Represents it has a Safety Manual, Safety Program and all necessary safety certificates and employee training. Further, Subcontractor shall take and comply with all reasonable safety precautions with respect to the Work, all safety measures initiated by Contractor and all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property. Subcontractor shall immediately report to Contractor any injury to any of Subcontractor's employees at the job site. Subcontractor will ensure that during excavation and soil disposal safety protection around the perimeter of the jobsite will be installed and maintained on a continuous basis.

17. The Agreement also contains an indemnity provision which provides, in pertinent part, the following:

<u>**Indemnity Agreement:**</u>
6. Subcontractor shall indemnify and hold Owner and Contractor free and harmless from any and all claims, losses, damages, injuries, and liabilities arising from the death or injury of any person or persons, or from the damage or destruction of any property or properties, caused by or connected with the performance of this Contract by subcontractors, agents or employees, except for damages arising from the sole active negligence of Contractor. **Prior** to commencement of any work, Subcontractor/Supplier **shall** deliver to the Contractor, Certificates of Insurance covering all policies providing the required insurance. Such certificate shall provide prior **actual** notice of cancellation. **<u>PLEASE REFER To Insurance Requirements.</u>** To the fullest extent permitted by the law
<u>Furthermore, the Subcontractor shall lodge with Contractor a renewal certificate for each policy at least 10 days before the expiration of the policy. Failure to provide these documents shall delay all payments until Contractor received proper documentation.</u>

18. The Insurance Requirements state:

1. As a condition of this Agreement, it is agreed that, prior to the commencement of the Work, the Sub- Contractor shall at its sole cost and expense, carry and maintain insurance with a company or companies acceptable to Owner and licensed to do business in the state in which the Project is located with a rating of not less than A VII, providing the owners and Construction Manager with the following insurance coverage:

(a) **Commercial General Liability (occurrence form)**

Commercial General Liability Insurance shall be written in ISO form CG 00 01 10 93 or a substitute form providing equivalent coverage. Coverage shall be provided for liability arising from:
- Premises & Operations
- Independent Contractors
- Employer's liability (including the tort liability of another assumed in a insured contract)
- Products-completed operations for a minimum of three years after project completion
- Personal injury and advertising injury
- Blanket contractual liability, on a primary non-contributory basis, waiver of subrogation (including the tort liability of another assumed in a insured contract)
- Explosion, collapse, & underground operations

The General Aggregate limit must apply separately to this project.

ISO additional insured endorsement CG 20 10 or a substitute providing equivalent coverage shall be used. (For ongoing operations and completed operations)

| | |
|---|---|
| $2,000,000 | General Aggregate |
| $2,000,000 | Products/Completed Operations Aggregate |
| $1,000,000 | Each Occurrence |
| $50,000 | Fire Damage (legal) Liability |

\*\*\*

**(d) Excess Liability**

Umbrella Liability Insurance With a limit of $2,000,000 per occurrence and general Aggregate. For demolition, structural, foundation, and all high hazard a limit of $5,000,000 is required. Umbrella limit of $10,000,000 per occurrence and general aggregate of $10,000,000 is required for crane exposures

2. All policies of insurance required under the terms of this Exhibit shall cover Owner, Contractor, CM, Lender, if any, and all of their respective partners, members, officers, successors and assignees (and any other individuals or entities as Owner may request) as additional insureds, and shall contain a waiver of subrogation in favor of such additional insureds and shall have reasonable and customary deductible amounts, provided that in no event shall such deductible amounts exceed $10,000 per occurrence. Cost(s) of defense shall not be included in any of the limits of liability required by this Exhibit. In addition, all policies shall be primary and non-contributing, have a per project endorsement and shall contain an agreement on the part of the insurers that in the event of cancellation or modification of the policy in whole or in part, or a reduction as to coverage or amount thereunder whether initiated by the insurer or any insured, the insurer shall give not less than thirty (30) days advance written notice to Owner. All such insurance shall be maintained, if available, until the expiration of any applicable statute of limitations, but in any event for a period of not less than three (3) years following completion of the Work and Construction Managers' obligations under this Agreement.

\*\*\*

**Please provide a certificate of insurance for Liability and WC, naming the following, Owner, Contractor as additional insured:**

**Third Street Equity LLC**
**Developing NY State, LLC**

19. The Insurance Requirements also include a Contractor/Subcontractor endorsement, which states:

   1. **Indemnity.** In consideration of the contract for work entered into by the Contractor and Subcontractor, and to the fullest extent permitted by law, the Subcontractor shall defend and shall indemnify, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required to indemnify and hold harmless, the owner of the property, and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s), and for any and all property damage or economic damage, including all attorney fees, disbursements and related costs, arising out of or resulting from the work covered by the contract to the extent such work was performed by or contracted through the Subcontractor or by anyone for whose acts the Subcontractor may be held liable, excluding only liability created by the sole and exclusive negligence of the indemnified parties. This indemnity agreement shall survive the completion of the work specified in the contract for that work.

   2. **Insurance.** The Subcontractor shall procure and shall maintain until final acceptance of the work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the property owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's work under the contract, whether performed by the Subcontractor, or any anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.

      2.1 The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, property owner and anyone else the property owner is required to name (as set forth in the schedule below), and shall specifically include additional insured coverage for completed operations. The insurance required to be carried by the Subcontractor and any sub-subcontractors shall be PRIMARY AND NON-CONTRIBUTORY With respect to each type of insurance specified hereunder, the Contractor's and property owner's insurance shall be excess to Subcontractor's insurance.

      \*\*\*

      2.4 Unless otherwise stipulated in the contract, the Subcontractor shall maintain no less than the limits specified for each of the following insurance coverages:

         a) <u>Commercial</u> General Liability using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 product-completed operations aggregate and $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;

b) <u>Umbrella</u> Liability Insurance With a limit of $2,000,000 per occurrence and general aggregate of $2,000,000. For demolition, structural foundation and all high hazard contractors a limit of $5,000,000 is required. A limit of $10,000,000 per occurrence and general aggregate is required for crane exposures.

\*\*\*

<u>List of Indemnified Parties and Additional Insureds:</u>

**Third Street Equity LLC**
**Developing NY State, LLC**

## ACCREDITED POLICY

20. Upon information and belief, Accredited issued Policy No. 1-TPM-NY-17-01112230 to Capital Concrete for the policy period of December 7, 2020 to December 7, 2021 (the "Accredited Policy").

## TENDERS TO ACCREDITED

21. On or about March 30, 2022, McMahon, Martine & Gallagher LLP, on behalf of Developing NY, sent a letter to Capital Concrete and Accredited requesting defense, indemnification and additional insured coverage for Developing NY for the Underlying Romero Lawsuit.

22. On or about November 1, 2023, counsel for Accredited sent a letter to McMahon, Martine & Gallagher LLP denying the tender for additional insured coverage for Developing NY for the Underlying Romero Lawsuit on the basis that Romero has not alleged, and their investigation has not revealed any facts showing that Capital Concrete caused Romero's injury.

23. On or about December 7, 2023, Fleischer Potash LLP, on behalf of Third Street Equity and Developing NY, sent a letter to Accredited requesting reconsideration of its denial of additional insured coverage for Plaintiffs for the Underlying Romero Lawsuit.

7

24. On or about December 14, 2023, counsel for Accredited set a supplemental disclaimer reiterating its denial of coverage to Third Street Equity and Developing NY for the Underlying Romero Lawsuit.

### COUNT I
### Declaration by the Court
### that Accredited owes defense coverage to Third Street Equity and Developing NY

25. Plaintiffs repeat, re-allege, and restate each and every allegation contained in paragraphs "1" through "24", inclusive, with the same force and effect as if fully set forth herein.

26. Third Street Equity and Developing NY qualify as additional insureds on the Accredited Policy.

27. In the Underlying Romero Lawsuit, Plaintiff alleges that he fell as a result of the Defendants' failure to keep the subject worksite clear from scattered tools, materials and debris.

28. Pursuant to its Agreement with Developing NY, Capital Concrete was required to keep the construction site free from accumulation of debris, waste material or rubbish.

29. The allegations of the Underlying Romero Lawsuit are of liability caused in whole or in part by Capital Concrete's acts or omissions or the acts or omissions of those acting on Capital Concrete's behalf as required for coverage, including the Underlying Plaintiff Romero.

30. Therefore, Accredited owes defense coverage to Third Street Equity and Developing NY for the claims pled against them in the Underlying Romero Lawsuit.

31. Accordingly, Plaintiffs are entitled to a declaration that Accredited is obligated to provide defense coverage to Third Street Equity and Developing NY for the Underlying Romero Lawsuit.

## COUNT II
## Breach of Contract Against Accredited

32. Plaintiffs repeat, re-allege, and restate each and every allegation contained in paragraphs "1" through "31", inclusive, with the same force and effect as if fully set forth herein.

33. Accredited's failure to make payment of fees and costs for Plaintiffs' defense against the Underlying Romero Lawsuit is a breach of its obligations under the Policy.

34. Plaintiffs have been damaged by Accredited's breach.

35. Accredited is obligated to pay/reimburse Plaintiffs for the defense fees and costs incurred on their behalf to date in an amount to be determined.

## COUNT III
## Declaration by the Court
## that Accredited owes indemnity coverage to Third Street Equity and Developing NY

36. The Plaintiffs repeat, re-allege, and restate each and every allegation contained in paragraphs "1" through "35", inclusive, with the same force and effect as if fully set forth herein.

37. The allegations in the Underlying Romero Lawsuit indicate that the Underlying Plaintiff Romero was injured he fell as a result of the Defendants' failure to keep the subject worksite clear from scattered tools, materials and debris while performing work in the course of his employment with Capital Concrete pursuant to its contract with Developing NY

38. The Underlying Plaintiff alleges, amongst other things, that Defendants failed to remove materials and/or debris from the work area, failed to make prompt, proper, necessary, reasonable and adequate inspections of the work area, failed to adequately and property maintain the work area, including the floor, and failed to remove materials and debris from the work area.

39. Pursuant to its Agreement with Developing NY, Capital Concrete was required to keep the construction site free from accumulation of debris, waste material or rubbish.

40. The Underlying Plaintiff also alleges, amongst other things, that Defendants failed to provide proper safety devices for protection against the hazard of falling and failed to provide property equipment for Romero.

41. Capital Concrete was responsible for the supervision and safety of its employees and the provision of its own equipment for its work at the premises.

42. The facts of the Underlying Romero Lawsuit indicate that Underlying Plaintiff Romero's injuries were caused in whole or in part by Capital Concrete's acts or omissions or the acts or omissions of those acting on Capital Concrete's behalf, including the Underlying Plaintiff Romero, as required for coverage.

43. Plaintiffs are entitled to a declaration that Accredited is obligated to provide indemnity coverage to Third Street Equity and Developing NY for any recovery busy the Underlying Plaintiff against them in the Underlying Romero Lawsuit.

WHEREFORE, Plaintiffs seek the following relief against Accredited:

(1) On Count I, a declaration that Accredited has an obligation to provide defense coverage to Third Street Equity and Developing NY for all of the claims pled against it in the Underlying Romero Lawsuit.

(2) On Count II, an award against Accredited for recovery of all defense fees and costs incurred and paid on behalf of Third Street Equity and Developing NY to date.

(3) On Count III, a declaration that Accredited has an obligation to provide indemnity coverage to Third Street Equity and Developing NY for the Underlying Romero Lawsuit.

10

(4) Such other relief as the Court deems just and equitable.

Dated: New York, NY
February 21, 2024

FLEISCHNER POTASH LLP

By:_____
Jennifer F. Mindlin, Esq.
*Attorneys for Plaintiffs,*
*Third Street Equity, LLC and*
*Developing NY State, LLC*
45 Broadway, 23rd Floor
New York, NY 10006
T: (646) 520-4200
Email: JMindlin@fp.law
File No.: 706-24182

*Index No.:*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

THIRD STREET EQUITY, LLC and DEVELOPING NY STATE, LLC,

        Plaintiffs,

    -against-

ACCREDITED SURETY AND CASUALTY COMPANY, INC.,

        Defendant.

### SUMMONS AND COMPLAINT FOR DECLARATORY JUDGMENT

**FLEISCHNER POTASH LLP**
**Attorneys for Plaintiff**
**45 Broadway, 23rd Floor**
**New York, NY 10006**
**(646) 520-4200**

*To:*
*Attorney(s) for*

*Service of a copy of the within*    is hereby admitted.
*Dated:*                                             ........................
                                                                                *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐   that the within is a (certified) true copy of a
    entered in the office of the clerk of the within named Court on
NOTICE OF
 ENTRY

☐   that an Order of which the within is a true copy will be presented for settlement to the Hon.
    one of the judges of the within named Court, at , on , at .
NOTICE OF
SETTLEMENT
*Dated:*

                          **FLEISCHNER POTASH LLP**