**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
THIRD STREET EQUITY, LLC and DEVELOPING NY
STATE, LLC,

                Plaintiffs,

        - against-

ACCREDITED SURETY AND CASUALTY COMPANY,
INC.,

                Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-01893 (OEM) (MMH)

ORELIA E. MERCHANT, United States District Judge:

On February 21, 2024, Plaintiffs Third Street Equity, LLC ("Third Street") and Developing NY State, LLC ("Developing NY") commenced this action in New York Supreme Court, Kings County against defendant Accredited Surety and Casualty Company ("Defendant") seeking a declaratory judgment. Complaint for Declaratory Judgment ("Compl."), Dkt. 1–3. On March 14, 2024, Defendant removed this action from state court to federal court. Notice of Removal, Dkt. 1. Specifically, Third Street and Developing NY ("Plaintiffs") seek a declaration that Defendant is obligated to provide defense and indemnity coverage on a primary basis to Plaintiffs as additional insureds and to Capital Source Concrete NY LLC ("Capital Concrete") for the consolidated personal injury lawsuit entitled *Tunin Moises Ordonez Romero v. Third Street Equity, LLC, Developing NY State, LLC and Yatziv Corp.*, Index No. 72294/2021, pending in New York Supreme Court, Queens County (the "Underlying *Romero* Lawsuit") and that Defendant must reimburse Plaintiffs for the fees and costs incurred for their defense in the Underlying *Romero* Lawsuit. *See generally* Compl.

Before the Court are Plaintiffs' partial motion for summary judgment and Defendant's motion for summary judgment dismissing the Complaint in its entirety.[1]  For the reasons below, Plaintiffs' motion is granted and Defendant's motion is denied.

## BACKGROUND

The following facts from the parties' Local Rule 56.1 statements are undisputed unless otherwise noted.

### A.  The Subcontract Agreement and Insurance Policy

On or before July 27, 2020, Developing NY entered into a subcontract agreement ("Subcontract Agreement") with Capital Concrete for certain concrete work as well as labor and services for a construction project at 26-35 Third Street, Queens, New York.  Pls.' Rule 56.1 ¶¶ 13–14; Declaration of Jennifer Mindlin ("Mindlin Decl."), Exhibit F.

The Subcontract Agreement required that Capital Concrete "always keep the construction site free from accumulation of debris, waste material or rubbish."  Pls.' Rule 56.1 ¶ 15; Mindlin Decl., Exhibit F at ACCREDITED000195.  The Subcontract Agreement required Capital Concrete to be "legally responsible for compliance with N.Y.C. OSHA Safety Regulations and represent[] it has a Safety Manual, Safety Program and all necessary safety certificates and employee training."  Pls.' Rule 56.1 ¶ 15; Mindlin Decl., Exhibit F at ACCREDITED000194–95.  The Subcontract Agreement also required Capital Concrete to "take and comply with all reasonable safety precautions with respect to the Work, all safety measures initiated by Contractor and all

---

[1] *See* Plaintiffs' Motion for Summary Judgment, Dkt. 30; Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Pls.' Mem."), Dkt. 33; Plaintiffs' Rule 56.1 Statement ("Pls.' Rule 56.1"), Dkt. 32; Defendant's Memorandum of Law in Opposition to Motion for Summary Judgment ("Def.'s Mem. in Opp."), Dkt. 38; Defendant's Rule 56.1 Statement Response ("Def.'s Rule 56.1 Response"), Dkt. 37; Plaintiffs' Reply Memorandum ("Pls.' Reply"), Dkt. 40; Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."), Dkt. 29; Defendant's Rule 56.1 Statement ("Def.'s Rule 56.1"), Dkt. 28; Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment ("Pls.' Mem. in Opp."), Dkt. 36; Plaintiffs' Rule 56.1 Statement Response ("Pls.' Rule 56.1 Response"), Dkt. 35; Defendant's Reply Memorandum ("Def.'s Reply"), Dkt. 39.

applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property." *Id.*

Plaintiffs allege that in connection with the Subcontract Agreement, Developing NY and Capital Concrete entered into "certain Insurance Requirements." Pls.' Rule 56.1 ¶ 17 (citing Mindlin Decl., Exhibit G). The "Insurance Requirements" document referenced by Plaintiffs requests, *inter alia,* "Please provide a certificate of insurance for Liability and WC" naming Third Street and Developing NY as "additional insured." Pls.' Rule 56.1 ¶ 18; Mindlin Decl., Exhibit G at ACCREDITED000012. Defendant disputes that this "Insurance Requirements" document was a part of the Subcontract Agreement and also disputes that Capital Concrete was party to the "Insurance Requirements" document obligating Capital Concrete to name Third Street and Developing NY as additional insureds. Def.'s Rule 56.1 Response ¶¶ 17–18. However, Defendant does not seemingly dispute the existence of the "Subcontract Insurance Agreement," Mindlin Decl., Exhibit G at ACCREDITED000013–14, wherein a representative of Capital Concrete signed an endorsement of its certificate of liability insurance which adds Third Street and Developing NY as additional insureds, *id.* at ACCREDITED000015; Def.'s Rule 56.1 Response ¶ 19. On the "Subcontract Insurance Agreement," a signature on behalf of Capital Concrete appears directly below the statement, "List of Indemnified Parties and Additional Insureds: Third Street Equity LLC[;] Developing NY State, LLC." Mindlin Decl., Exhibit G at ACCREDITED000014; *see also* Pl.'s Rule 56.1 ¶ 19. Additionally, the "Subcontract Insurance Agreement" requires that the subcontractor's insurance be "PRIMARY AND NON-CONTRIBUTORY With respect to each type of insurance specified" in the contract. Mindlin Decl., Exhibit G at ACCREDITED000013 (alteration in original); *see also* Pls.' Rule 56.1 ¶ 19.

3

It is undisputed that Defendant issued Policy no. 1-TPM-NY-17-01112230 to Capital Concrete for the policy period of December 7, 2020 to December 7, 2021, ("Insurance Policy"). Def.'s Rule 56.1 Response ¶ 20.  Defendant does not dispute that the Insurance Policy contains two endorsements affording additional insured coverage to the "[p]erson(s) or Organization(s)" "[a]s Required by Written Contract executed prior to any claim or 'suit,'" Def.'s Rule 56.1 Response ¶ 22; Mindlin Decl., Exhibit H at ACCREDITED000040, and "[a]ny person or organization for whom [Capital Concrete is] performing operations when [Capital Concrete] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Capital Concrete's] policy," Def.'s Rule 56.1 Response ¶ 23; Mindlin Decl., Exhibit H at ACCREDITED000045.  The Insurance Policy contains a "Primary and Noncontributory – Other Insurance Condition" stating that the Insurance Policy is "primary to and will not seek contribution from any other insurance available to an additional insured under [Capital Concrete's] policy provided that: (1) The additional insured is a Named Insured under such other insurance; and (2) [Capital Concrete has] agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured."  Pls.' Rule 56.1 ¶ 24; Mindlin Decl., Exhibit H, ACCREDITED000039.  It is undisputed that the Insurance Policy covers liability caused in whole or in part by acts or omissions by Capital Concrete or those acting on its behalf.  Pls.' Rule 56.1 ¶ 22; Mindlin Decl., Exhibit H at ACCREDITED000040–41, ACCREDITED000045–46; Def.'s Rule 56.1 ¶¶ 2–3.

## B.  The Underlying *Romero* Lawsuit

Tunin Moises Ordonez Romero ("Romero") was employed as a laborer by Capital Concrete.  Pls.' Rule 56.1 ¶ 8.  On or about October 12, 2021, and December 24, 2021, Romero

4

commenced two actions in the New York Supreme Court, Queens County against Third Street, NY Enterprise Realty Corporation, Developing NY, and Yatziv Corp. ("*Romero* Defendants") seeking recovery for personal injuries allegedly sustained on June 22, 2021, when he was allegedly caused to trip and fall while working at the premises located at 26–35 Third Street, Queens, New York. *Id.* ¶¶ 1–2. These actions were consolidated on April 5, 2023. *Id.* ¶ 3.

In the *Romero* Lawsuit, Romero alleges that Defendants owned, operated, maintained, managed, controlled, and supervised the subject property and hired various entities to provide and perform certain work, labor and/or services. *Id.* ¶¶ 4–5; Mindlin Decl., Exhibit A ¶¶ 6–11, 24, Exhibit B ¶¶ 6–11, 24. Romero alleges that "he was caused to trip and fall as a result of the [*Romero*] Defendants failure to keep the subject worksite clear from scattered tools, materials and debris" and was "caused to be injured as a result of trip and fall related risks and due to [*Romero*] Defendants failure to provide adequate and proper protection against the hazards of falling" as well as "[*Romero*] Defendants, their agents, servants and/or employees failure and omission to provide [him] with a safe place to work." Mindlin Decl., Exhibit A ¶¶ 51, 53, 54, 57, Exhibit B ¶¶ 51, 53, 54, 57. Romero asserts claims against *Romero* Defendants for negligence and violations of New York Labor Law §§ 200, 240, and 241(6). Pls.' Rule 56.1 ¶ 6.

In his Verified Bill of Particulars, Romero again asserts that his accident was caused by, *inter alia*, Third Street's failure to "remove materials and/or debris from work area" and "provide the proper equipment . . . ," thereby "causing, permitting, and allowing [him] to engage in dangerous labor practices." Mindlin Decl., Exhibit D ¶ 18; *see* Pl.'s Rule 56.1 ¶ 7.

On or about February 9, 2023, Third Street and Developing NY filed a third-party complaint against Capital Concrete in the *Romero* Lawsuit seeking common law and contractual

indemnification and contribution and damages for breach of contract to procure insurance ("Third-Party Complaint").  Pls.' Rule 56.1 ¶ 9; Mindlin Decl., Exhibit E.  Therein, Third Street and Developing NY allege that Developing NY entered into a Subcontract Agreement for work at the subject premises.  Pls.' Rule 56.1 ¶ 10; Mindlin Decl., Exhibit E ¶ 5.  Third Street and Developing NY also allege that "[a]t the time and place referred to in [Romero's] pleadings and/or prior thereto, [Capital Concrete] exercised control over" and "performed work and services at the place of the occurrence referred to in Plaintiff's pleadings."  Pls.' Rule 56.1 ¶ 11; Mindlin Decl., Exhibit E ¶¶ 15–16.  Third Street and Developing NY allege that "[a]t the time and place of the occurrence referred to in Plaintiff's pleadings and prior thereto, the work performed at the [site] was under the direct supervision and control of [Capital Concrete]."  Pls.' Rule 56.1 ¶ 12; Mindlin Decl., Exhibit E ¶ 17.  Further, Third Street and Developing NY allege that Romero's incident, injuries, and damages "arose out of the performance of the work of [Capital Concrete]" and the performance of the work referenced in the Subcontract Agreement.  Mindlin Decl., Exhibit E ¶¶ 18, 23, 26.  Third Street and Developing NY also allege that Capital Concrete "supervised, directed, and controlled the work at the Construction Project, and [Capital Concrete] was in complete control over construction means, methods, and procedures under the Subcontract."  *Id.* ¶ 35.  Further, that if Romero "sustained personal injury as alleged in [his] Verified Complaint, said personal injury was caused and brought about solely by the primary and active negligence, recklessness, violation of applicable rules, ordinance, laws, regulations and statutes of [Capital Concrete] by its agents, servants and/or employees which supervised, caused, or contributed to the damage[s] alleged" by Romero.  *Id.* ¶ 36.

### C. Tender

The parties dispute whether Defendant received Third Street and Developing NY's letter requesting defense, indemnification, and additional insured coverage for Developing NY for the *Romero* Lawsuit on March 30, 2022, or October 6, 2023.  Pls.' Rule 56.1 at ¶ 25; Def.'s Rule 56.1 Response ¶ 25.  Plaintiffs argue that on March 30, 2022, Developing NY, through its counsel, sent a letter to Capital Concrete and Defendant requesting defense, indemnification and additional insured coverage for Developing NY for the *Romero* Lawsuit.  Pls.' Rule 56.1 ¶ 25.  Defendant contends that it did not receive the tender letter until October 6, 2023.  Def.'s Rule 56.1 Response ¶ 25.  However, it is undisputed that on November 1, 2023, Defendant's counsel denied the tender for additional coverage for Developing NY for the Underlying *Romero* Lawsuit on the basis that there were no facts showing that Capital Concrete caused the injury.  Def.'s Rule 56.1 Response at ¶ 26; Mindlin Decl., Exhibit J.

### LEGAL STANDARDS

### A. Subject-Matter Jurisdiction

The Court has subject-matter jurisdiction pursuant to the parties' diversity of citizenship.[2] Therefore, the law of the forum state, New York, governs the choice of law over the dispute.  *See AEI Life LLC v. Lincoln Benefit Co.,* 892 F.3d 126, 132 (2d Cir. 2018) (collecting cases).  Because both parties apply New York's substantive law to the issues, "their consent concludes the choice of law inquiry," *Texaco A/S (Denmark) v. Com. Ins. Co. of Newark, NJ,* 160 F.3d 124, 128 (2d Cir. 1998) (internal citation omitted), and New York state law governs the matter.

---

[2] On June 3, 2024, the Court ordered Defendant show cause as to why the case should not be dismissed for lack of subject-matter jurisdiction based on its failure to plead the identity and citizenship of Third Street and Developing NY.  Defendant replied with a letter as to Third Street and Developing NY's citizenship.  Letter Showing Cause Why Case Should Not Be Dismissed for Lack of Subject Matter Jurisdiction, Dkt. 9.  On July 1, 2024, the Court confirmed its subject-matter jurisdiction.  *See* July 1, 2024, Order confirming Court's subject-matter jurisdiction; *see also* Notice of Removal ¶ 11 ("upon information and belief, the amount in controversy exceeds $75,000, exclusive of interests and costs.").

New York law interprets contracts pursuant to the "ordinary principles of contract interpretation," giving "full meaning and effect" to all provisions and construing unambiguous provisions in line with their "plain and ordinary meaning." *Burlington Ins. Co. v. NYC Transit Auth.,* 29 N.Y.3d 313, 321 (2017). Interpretation of unambiguous insurance agreement provisions is a matter of law for the Court. *See id.*

### B. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant a motion for summary judgment only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006).

The moving party bears the burden of showing that they are entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir.

8

1996)).  The court's role is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir. 2000).

If the moving party meets its burden of demonstrating the absence of a disputed issue of material fact, then the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial."  FED. R. CIV. P. 56(e); *Sheet Metal Workers' Nat'l Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014).  In showing a genuine issue for trial, the nonmoving party cannot rely solely on "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

## DISCUSSION

Third Street and Developing NY request (1) a declaration that Defendant has an obligation to provide defense coverage to them for all of the claims pled against Third Street and Developing NY in the *Romero* Litigation, (2) an award against Defendant for recovery of all defense fees and costs incurred and paid on behalf of Third Street and Developing NY to date, and (3) a declaration that Defendant has an obligation to provide indemnity coverage to Third Street and Developing NY for the *Romero* Litigation.  *See generally* Compl.  Third Street and Developing NY seek partial summary judgment that Defendant has an obligation to provide defense coverage to them for the *Romero* Lawsuit on a primary basis, and to reimburse them for the defense fees and costs incurred on their behalf.  Pls.' Mem. at 15–16.  Defendant seeks summary judgment dismissing Third Street and Developing NY's Complaint and declaring that they are not entitled to a defense or indemnification in connection with the *Romero* Lawsuit under the Insurance Policy.  Def.'s Mem.

at 7.  The main issue before the Court is whether the allegations and facts in the *Romero* Lawsuit raise a reasonable possibility of liability caused, in whole or in part, by Capital Concrete's acts as is required for coverage under the Insurance Policy.

### A.  Defendant's Duty to Defend Third Street and Developing NY in *Romero* Lawsuit

Third Street and Developing NY argue that they are entitled to defense coverage under the Insurance Policy because they are additional insureds on the Insurance Policy and the allegations of the *Romero* Lawsuit fall within the Insurance Policy coverage.  Pls.' Mem. at 5–6.  Defendant argues that it does not owe defense or indemnification obligations to Third Street and Developing NY for the *Romero* Lawsuit because the additional insured endorsements in the Insurance Policy limit additional insured coverage to liability caused "in whole or in part by" Capital Concrete and the *Romero* Lawsuit does not plausibly allege such liability.  Def.'s Mem. in Opp. at 2.

The Court first resolves whether Plaintiffs were additional insureds under the Insurance Policy.  Prior to the alleged underlying incident, Capital Concrete obtained the Insurance Policy which contains two endorsements affording additional insured coverage to the persons or entities "As Required by Written Contract executed prior to any claim or 'suit,'" Mindlin Decl., Exhibit H at ACCREDITED000040, and "Any person or organization for whom [Capital Concrete is] performing operations when [Capital Concrete] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured," *id.* at ACCREDITED000045.  Capital Concrete was obligated to perform concrete work, labor, and services for Developing NY under the Subcontract Agreement.  Pls.' Rule 56.1 ¶¶ 13–14; Mindlin. Decl., Exhibit F.  Capital Concrete signed the "Subcontract Insurance Agreement" in which Third Street and Developing NY were listed as indemnified parties and additional insureds.

*Id.*, Exhibit G at ACCREDITED000014. Thus, Third Street and Developing NY are additional insureds under the terms of the additional insured coverage provision in the Insurance Policy.

Defendant's coverage of Third Street and Developing NY as additional insureds depends on whether the allegations of the *Romero* Lawsuit raise a reasonable possibility of recovery under the Insurance Policy. The Second Circuit espouses four principles of New York insurance law that guide the duty to defend analysis.

> First, the duty of an insurer to defend its insured is exceedingly broad and far more expansive than the duty to indemnify its insured. Second, the insurer's duty to provide a defense is invoked whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be. Third, if any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action. Finally, insurers are to look beyond the four corners of the complaint in deciding whether there is coverage. An insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint.

*High Point Design, LLC v. LM Ins. Corp.,* 911 F.3d 89, 94–95 (2d Cir. 2018) (citation modified). An insurer may therefore deny its insured a defense "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy." *Id.* at 95 (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford,* 64 N.Y.2d 419, 424 (1985). "If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *Id.* (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.,* 98 N.Y.2d 435, 443 (2002)). "In other words, an insurer must defend an insured if a 'reasonable possibility' of recovery under the policy exists pursuant to either (a) the allegations in the underlying action or (b) the insurer's actual knowledge of the facts." *Axis Constr. Corp. v. Travelers Indem. Co. of Am.*, 20-CV-1125 (DRH) (ARL), 2021 WL 3912562, at *4 (E.D.N.Y. Sept. 1, 2021) (citing *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65–66 (1991)). The

11

standard for determining the duty to defend an additional insured is the same standard as applied to its named insured. *See BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 711 (2007).

An underlying complaint is "the significant and usual touchstone for determining" an insurer's duty to defend, but its allegations are not controlling. *Fitzpatrick*, 78 N.Y.2d at 65–66. The insurer must also consider judicial admissions in the insured's responsive pleadings in the underlying tort action or other formal submissions in the current or underlying litigation to confirm or clarify the nature of the underlying claims." *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 89 N.Y.2d 621, 635 (1997). This includes consideration of a "third-party complaint brought in the underlying action by plaintiffs herein." *All State Interior Demolition Inc. v. Scottsdale Ins. Co.,* 92 N.Y.S. 3d, 256, 257 (N.Y. App. Div. 1st Dep't 2019).

Where policy language covers liability "caused in whole or in part" by a named insured, additional insureds are only covered when the injuries are proximately caused by the named insured. *Burlington*, 29 N.Y.3d at 324 ("'[C]aused, in whole or in part,' as used in the endorsement, requires the insured to be the proximate cause of the injury giving rise to liability, not merely the 'but for' cause."). Furthermore, New York courts have recognized that a duty to defend an additional insured exists even when the named insured is not a named defendant due to the worker's compensation bar which prevents plaintiffs from suing their employers. *See, e.g., Axis Constr. Corp.*, 2021 WL 3912562 at *6 ("The practical reality here is New York law *statutorily* prohibits [plaintiff] from naming his employer . . . as a negligent party liable for his injuries . . . [the insurer] cannot acknowledge that its named insured employed the injured underlying plaintiff . . . and then confine its analysis of its duty to defend to the first-party complaint allegations; doing so ignores the realities of New York litigation practice.").

If there is no reasonable possibility that the proximate cause of Romero's injury was Capital Concrete, *i.e.*, if the only reasonable possibility is that Romero's or others' conduct caused the injury, Defendant would not be obligated to defend Third Street or Developing NY. *See Axis Constr. Corp.*, 2021 WL 3912562 at *5 (citing *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.,* 462 F. Supp. 3d 317, 324 n.4 (S.D.N.Y. 2020). A duty to defend is triggered when the insured has safety obligations at the injury site. *See, e.g.,* (*Travelers Prop Cas. Co. of Am. v. Harleysville Worcester Ins. Co.,*685 F. Supp. 3d 187, 212 (S.D.N.Y. 2023) (defense obligation triggered because there was a reasonable possibility that the insured's acts or omissions with regards to workplace safety were a substantial cause of the alleged accident). The precise cause of injuries is not required to determine the duty to defend, as proximate cause embraces the possibility of multiple causes of an injury. *See Travelers Prop. & Cas. Co. of Am. v. Clear Blue Ins. Co.,* 21-CV-4721 (PGG), 2024 WL 4216018, at *8 (S.D.N.Y. Sept. 17, 2024).

Plaintiffs argue that the allegations raised in both the *Romero* Lawsuit and Third-Party Complaint suggest a reasonable possibility of coverage. Pls.' Mem. at 12. Defendant argues that both the Underlying *Romero* Lawsuit, Def.'s Mem. at 6, and the Third-Party Complaint fail to raise the reasonable possibility that Capital Concrete caused the injury, *Id.* at 7; Def.'s Mem. in Opp. at 2–3.

The *Romero* Lawsuit specifically alleges that Romero was caused to trip and fall as a result of *Romero* Defendants' failures to keep the worksite clear from scattered tools, materials, and debris and failure to provide adequate and proper protection against the hazards of falling. Mindlin Decl., Exhibit A ¶¶ 51, 53; Exhibit B ¶¶ 51, 53. Additionally, the Romero sets forth in his Verified Bill of Particulars that his accident was caused due to *Romero* Defendants' failure to remove materials and/or debris from work area, provide the proper equipment for Romero, and causing,

permitting, and allowing Romero to engage in dangerous labor practices.  Mindlin Decl., Exhibit D ¶ 18.

Furthermore, Third Street and Developing NY's Third-Party Complaint asserts that Capital Concrete exercised control over and performed work and services at the site where Romero was injured.  Mindlin Decl., Exhibit E ¶¶ 15–16.  They allege that Romero's injuries arose out of Capital Concrete's performance under the Subcontract Agreement and was caused and brought about solely by Capital Concrete's actions or omissions or those acts or omissions of its agents, servants or employees.  Mindlin Decl., Exhibit E ¶¶ 23, 36.  Capital Concrete was obligated under the Subcontract Agreement to keep the work site "free from accumulation of debris, waste material or rubbish," Mindlin Decl., Exhibit F at ACCREDITED000195, and to be responsible for the safety and training of its employees and those working on its behalf, *id.* at ACCREDITED000194–95.

Defendant argues that the *Romero* Lawsuit does not raise a reasonable possibility of coverage because Romero did not allege that Capital Concrete caused the injury; rather he only sued Third Street and Developing NY.  Def.'s Mem. at 6.  However, the plain fact that New York law statutorily prohibits Romero from naming Capital Concrete as a negligent party liable for his injuries is not a basis to narrow Defendant's defense duty.  *See Axis Constr. Corp.*, 2021 WL 3912562 at *13; *Travelers Prop. Cas. Co. of Am.*, 685 F. Supp. 3d at 207 ("It would be unreasonable to restrict the duty to defend to claims made directly against named insureds in a statutory system that prevents plaintiffs from suing certain potentially liable parties."); *New Hampshire Ins. Co. v. Travelers Indem. Co.*, 22-CV-05968 (CM) (GS), 2024 WL 1484191, at *7 (S.D.N.Y. Apr. 5, 2024) (the underlying complaint's failure to level allegations against a subcontractor is not dispositive of the duty to defend and the court "must also consider the extrinsic

circumstances surrounding the accident in deciding whether [there is] a duty to defend—especially where [the employee] is statutorily barred from suing his employer."). Suits against an employer for injuries in the course of employment are precluded by N.Y. Workers' Compensation Law § 11 and "[w]orkers' compensation benefits are 'the sole and exclusive remedy of an employee against his employer for injuries in the course of employment.'" *Weiner v. City of New York,* 19 N.Y.3d 852, 854 (N.Y. 2012). Thus, Capital Concrete could not face liability in the *Romero* Lawsuit. The parties do not dispute that Romero was employed by Capital Concrete. Def.'s Rule 56.1 Response ¶ 8. Defendant cannot acknowledge that its named insured employed Romero and then confine its analysis of its duty to defend to whether it is a named party in the *Romero* Litigation complaint as doing so "ignores the realities of New York litigation practice." *Axis Constr. Corp.*, 2021 WL 3912562 at *6.

Defendant further contends that the Third-Party Complaint is "conclusory in nature" and thus fails to raise the reasonable possibility that Capital Concrete was a cause of Romero's injury. Def.'s Mem. at 6; Def.'s Mem. in Opp. at 2–3. However, Defendant attempts to separate the allegations in the underlying complaint from the Third-Party Complaint and overlooks the fact that the inquiry considers the totality of the underlying litigation, that is, "when deciding whether the pleadings in an underlying action create a reasonable possibility of coverage, courts often consider not just the claimant's underlying complaint, but also any relevant third-party complaints impleading the named insured." *Phoenix Ins. Co. v. Hudson Excess Ins. Co.*, No. 21-CV-4474 (JPC), 2023 WL 5048629, *8 (S.D.N.Y. Aug. 8, 2023) (citing *All State Interior Demolition Inc. v. Scottsdale Ins. Co.,* 92 N.Y.S.3d 256, 257 (1st Dep't 2019)).

Further, both parties address *Certain Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of Am.,* 664 F. Supp. 3d 288 (E.D.N.Y. 2023) in their arguments as to whether the Third-

15

Party Complaint is conclusory in nature so as to not trigger Defendant's defense obligations. Def.'s Mem. in Opp. at 3; Pls.' Mem. at 9.  In *Certain Underwriters*, the third-party complaint alleged the following: (1) that the work performed by the underlying plaintiff was under the direct supervision and control of the subcontractor and that the subcontractor was responsible for the underlying plaintiff's safety in the performance of the work and (2) that the subcontractor constituted, caused, or contributed to the accident.  664 F. Supp. 3d at 291.  The court deemed the allegation that the work was under the subcontractor's direct supervision and control non-conclusory and considered it in sum with the underlying plaintiff's bill of particulars and facts taken from depositions to determine that there were sufficient facts to raise a reasonable possibility of coverage.  *Id.* at 295.

Similarly, in *U.S. Specialty Ins. Co. v. Harleysville Worcester Ins. Co.*, the court "liberally construed" the allegations in the underlying complaint and third-party complaint to find that the allegations fell within the insurance policy and insurer's duty to defend.  20-CV-7691 (SLC), 2021 WL 4043457, at *9 (S.D.N.Y. Sept. 3, 2021) (considering along with the underlying complaint, the third-party complaint allegations that the subcontract required the subcontractor to obtain an insurance policy that contained an additional insured endorsement covering the owner for bodily injuries such as those alleged and that the subcontractor's negligence or recklessness may have been the cause of injuries).  Likewise, in *Colony Ins. Co. v. Southwest Marine & Gen. Ins. Co.*, the court found there was a reasonable possibility that the subcontractor's acts or omissions with regards to workplace conditions and safety caused the alleged accident.  22-CV-1590 (KPF), 2024 WL 1195401, at *15 (S.D.N.Y. March 19, 2024).  There, the third-party complaint alleged that at all relevant times, the subcontractor was present at the job site, controlled the work that the underlying plaintiff was engaged in, and was responsible for maintaining the premises and site

safety and, if taken as true, asserted that the subcontractor's acts or omissions contributed to the accident.  *Id.*  On the contrary, where a third-party complaint does not allege the employer created the condition, the employer's insurer has no duty to defend the additional insured.  *Axis Constr. Corp.,* 2021 WL 3912562 at *7 (collecting cases).

Defendant identifies several cases to support its assertion that Plaintiffs' purported conclusory allegations in their third-party complaint are insufficient to trigger its duty to defend.  In *Pioneer Central Sch. Dist. v. Preferred Mut. Ins. Co.*, it was undisputed that the employer was not responsible for the actions that caused the alleged injuries.  86 N.Y.S.3d 364, 366 (N.Y. App. Div., 4th Dep't 2018).  In *Hanover Ins. Co. v. Philadelphia Indem. Ins. Co.,* 73 N.Y.S.3d 549, 550–51 (N.Y. App. Div., 1st Dep't 2018) and *Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Connecticut,* 19-CV-1355 (AJN), 2021 WL 797670, *4–5 (S.D.N.Y. Mar. 1, 2021), there were no allegations that the acts or omissions of the employer caused the accident.

These cases are distinguishable.  Here, the Subcontract Agreement explicitly obligates Capital Concrete to keep the work site clear of debris and provide safety materials to its employees; the omission of which purportedly injured Romero.  Moreover, the Third-Party Complaint alleges that Capital Concrete's "primary and active negligence, recklessness, violation of applicable rules, ordinances, laws, regulations, and statues," Mindlin Decl., Exhibit E ¶ 36, and performance of the work under the Subcontract Agreement, *id.* ¶¶ 18, 23, caused or contributed to Romero's alleged harm.  Through the allegations in their Third-Party Complaint, Third Street and Developing NY assert that Capital Concrete created the condition.  For instance, the Third-Party Complaint alleges that Capital Concrete entered into the Subcontract Agreement.  *Id.* ¶ 5.  It also alleges that Capital Concrete "performed work and services at" and "exercised control over" the place of the alleged incident, referencing Romero's pleadings in the *Romero* Litigation.  *Id.* ¶¶ 15–16.  It further alleges

17

that Romero worked at the construction project under Capital Concrete's direct supervision and control. *Id.* ¶ 17. Further, it states that Capital Concrete "was in complete control over construction means, methods, and procedures under the Subcontract," *id.* ¶ 35. It was Capital Concrete's obligation to keep the work site free from accumulation or debris, and to provide safety and training. Mindlin Decl., Exhibit F at ACCREDITED000194–95.

Romero alleges both that Third Street and Developing NY had ownership and control over the subject property, Mindlin Decl., Exhibit A ¶¶ 6–11, 24, Exhibit B ¶¶ 6–11, 24, and that he was caused to trip and fall as a result of their failure to keep the worksite clear from scattered tools, materials, and debris, *id.* Mindlin Decl., Exhibit A ¶ 51, Exhibit B ¶ 51. Further, Romero's Verified Bill of Particulars alleges that his accident was caused by Third Street's failure to "remove materials and/or debris from work area" and "provide the proper equipment . . . ," thereby "causing, permitting, and allowing [him] to engage in dangerous labor practices." *Id.,* Exhibit D ¶ 18.

Romero's injuries were allegedly caused by a failure to keep the worksite clear from tools, materials, and debris and lack of safety gear. Consequently, if the allegations from the underlying complaint, Verified Bill of Particulars, and Third-Party Complaint, are taken as true, Capital Concrete's actions or omissions of its obligations under the Subcontract Agreement allegedly caused Romero's fall because it was Capital Concrete's obligation to keep the subject property clear of materials and debris and provide safety gear. This raises a reasonable possibility that Capital Concrete faces liability through the *Romero* Lawsuit for its alleged negligence in creating the condition that proximately caused Romero's alleged injuries. Plaintiffs are therefore entitled to defense coverage as additional insureds under the Insurance Policy for the *Romero* Lawsuit.

18

**B. Defendant's Duty to Indemnify**

Defendant moves for summary judgment seeking a declaration that it has no obligation to indemnify Plaintiffs in the Underlying *Romero* Lawsuit.  Def.'s Mem. at 2.  This motion is premature.  The declaration of whether or not an insurer must indemnify a party as an additional insured must await the determination of the named insured's liability in the underlying action.  *See Harleysville Ins. Co. v. United Fire Protection, Inc.,* 211 N.Y.S.3d 49 (1st Dept. 2024); *see also Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.,* 90 F.3d 671, 676 (2d Cir. 1960).  The Court is unaware of any evidence showing that Capital Concrete is not still a third-party defendant in the Underlying *Romero* Lawsuit, and so its liability remains undetermined.  Thus, the Court cannot prematurely decide whether Defendant owes Plaintiffs a duty to indemnify and reserves judgment on such issue.  Defendant's motion for summary judgment on its duty to indemnify is denied without prejudice as premature.

**C. Whether the Insurance is Primary**

Plaintiffs seek a declaration that Defendant owes them additional insured coverage for the *Romero* Lawsuit on a primary and non-contributory basis.  Pls.' Mem. at 14.  Beyond its contention that it is not obligated to defend Plaintiffs, Defendant does not dispute that the Insurance Policy contains a primary and noncontributory insurance condition.  *See* Def.'s Rule 56.1 Response ¶ 24.  The primary and noncontributory condition in the Insurance Policy affords primary and noncontributory coverage to an additional insured if the additional insured is named and the parties have agreed that the Insurance Policy would be primary and noncontributory.  *See* Mindlin Decl., Exhibit H at ACCREDITED000039.  Capital Concrete agreed to provide Plaintiffs coverage on a primary and non-contributory basis.  *See id.*, Exhibit G at ACCREDITED000013.  It is already established that Third Street and Developing NY are additional insureds.  Thus, in light of the

Insurance Policy language that the insurance is primary and noncontributory for any additional insured, Defendant owes coverage to Third Street and Developing NY for the Underlying *Romero* Lawsuit on a primary and non-contributory basis.  *See Fid. & Guar. Ins. Co. v. Accredited Sur. & Cas. Ins. Co.*, 23-CV-6427, 2025 WL 240589, at *6 (S.D.N.Y. Jan. 16, 2025) ("[b]ased on the plain language of the relevant agreements, there is no genuine dispute that [insurer's] coverage is primary and non-contributory[.]").

### D. Whether Defendant Must Reimburse Third Street and Developing NY's Defense Fees and Costs in the *Romero* Lawsuit

There is also no dispute that if defense coverage is owed, Defendant is obligated to reimburse Third Street and Developing NY for the reasonable, post-tender fees and costs incurred in defending them against the *Romero* Lawsuit, plus statutory pre-judgment interest.  Although the parties dispute when the first tender occurred, there is no dispute that Defendant refused to defend Plaintiffs on November 1, 2023.

"[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so." *Nat'l Union Fire Ins. Co.,* 962 N.Y.S.2d at 9.  Beginning on November 1, 2023, Defendant refused to defend Plaintiffs in the Underlying *Romero* Lawsuit.  Def.'s Rule 56.1 Response at ¶ 26; Mindlin Decl., Exhibit J.  Therefore, Defendant is responsible for Plaintiffs' defense costs from November 1, 2023.

### CONCLUSION

For the foregoing reasons, with respect to coverage issues regarding the Underlying *Romero* Lawsuit, the Court grants Third Street and Developing NY's motion for partial summary judgment and denies Defendant's motion for summary judgment.  Accordingly, Defendant is obligated to provide defense coverage to Third Street and Developing NY for the *Romero* Lawsuit

on a primary basis and to reimburse Third Street and Developing NY's defense costs from November 1, 2023.

Because the only remaining issue in this case is indemnification, and the outcome of that issue is dependent on the outcome of the *Romero* Lawsuit, this case is administratively closed pending the resolution of the *Romero* Lawsuit and with leave to reopen the action within 30 days of resolution of the *Romero* Lawsuit.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

December 2, 2025
Brooklyn, New York